UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE


Mark S. Reenstierna
T.H. Reenstierna, LLC

     v.                                  Civil No. 14-cv-57-JL
                                         Opinion No. 2016 DNH 073
Kenneth D. Currier



                         **MEMORANDUM ORDER**

    This diversity action requires the court to examine the contours of New Hampshire's absolute witness immunity doctrine. See Provencher v. Buzzell-Plourde Assocs., 142 N.H. 848 (1998). Plaintiff Mark S. Reenstierna, a real estate appraiser, and his company, T.H. Reenstierna, LLC, sued appraiser Kenneth D. Currier based on Currier's role as an investigator and witness in disciplinary proceedings instituted against Reenstierna by the New Hampshire Real Estate Appraisal Board. See N.H. Rev. Stat. Ann. § 310-B. Those proceedings eventually terminated in Reenstierna's favor. Reenstierna claims that Currier should not have accepted the assignment because he is Reenstierna's direct business competitor and that he intentionally submitted a false, damaging report and testimony to the Board. Before the court is Currier's motion for summary judgment, in which he claims that New Hampshire law gives him absolute immunity from liability. After oral argument and review of the parties' submissions, the

court finds that New Hampshire law protects Currier and therefore grants his motion for summary judgment.

## I. **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial. See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)). A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).

In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Id. The court will not credit conclusory allegations or speculation. See Meuser, 564 F.3d at 515; Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir. 1998). With this standard in place, the court turns to the facts of the case.

## II. **Factual background**

Based in Massachusetts, Reenstierna has been a real estate appraiser in New England and New York for roughly 30 years, specializing in the appraisal of gas stations and convenience stores. He is President of plaintiff T.H. Reenstierna, LLC. Defendant Currier is also a real estate appraiser, licensed in Maine, New Hampshire, Massachusetts, and New York. He, too, has expertise in appraisals of gas stations and convenience stores.

In early 2010, Reenstierna was hired by Cumberland Farms to appraise one of its properties in connection with a taking by the New Hampshire Department of Transportation for a highway project. He provided the appraisal to Cumberland Farms in March 2010. When he signed the appraisal, Reenstierna included the parenthetical notation "renewing" in the signature line, next to the number of his then-expired New Hampshire Certified General Real Estate License. There is no such formal designation in New Hampshire; one is either licensed or not.

In September 2011, an anonymous grievance was filed against Reenstierna with the Board.[1] The grievance alleged that Reenstierna was practicing his trade without a license. The

---

[1] It was later learned that the grievance was filed by someone employed by the New Hampshire Department of Transportation.

Board reviewed the grievance at its next regularly scheduled meeting in October, during which it voted to have its grievance officer investigate the grievance.  Consistent with Board regulations, that grievance officer sought the services of an expert to provide an appraisal review report of Reenstierna's Cumberland Farms appraisal to the Board.[2]  On November 9, 2011, the Board requested that Currier provide the Board with such a report, which he did on February 13, 2012.  Currier went beyond the transgression noted in the original grievance, finding numerous problems with the substance of Reenstierna's appraisal.

After Currier was retained, but before he submitted his report, Mark Correnti assumed the position of grievance officer. After receiving Currier's report, Correnti attempted to resolve the grievance informally, as required by Board rules.  Correnti met with Reenstierna in March 2012.  Correnti subsequently proposed a resolution – Reenstierna surrendering his license – which Reenstierna rejected in May 2012.  At its next meeting,

---

[2]In his Complaint and affidavit, Reenstierna has contended that prior to Currier's engagement, three other appraisers had reviewed Reenstierna's work and found no wrongdoing.  The court rejects that assertion for two reasons.  First, every Board member associated with the investigation has testified that there was no such prior review.  Moreover, Reenstierna conceded in interrogatory answers that his claim is based on second-hand information.  It is therefore not admissible for summary judgment purposes, leaving the Board members' testimony unrebutted.  See Fed. R. Civ. P. 56(c)(2), (4); Fed. R. Evid. 602, 801 & 802.

Correnti provided the Board with Currier's report and a recommendation to proceed with a disciplinary hearing. The Board voted to commence a disciplinary hearing, which was held on July 26, 2012. See N.H. Code R. Rab 203.02(7)(c) (2013).[3]

Reenstierna moved to dismiss the grievance because, he argued, the Board had no authority to entertain an anonymous complaint. The Board denied the motion on November 2, 2012, and on the same day, ruled that Reenstierna had violated a number of standards applicable to appraisers, but that only the licensure issue required discipline. The Board ordered Reenstierna to pay an administrative fine of $1000 and take fifteen hours of appraisal-related ethics classes. In addition, Reenstierna was required, within ten days, to inform all his current clients of the Board's findings, and, for the following year, to provide a copy of the Board's order to any prospective clients. By motion received by the Board November 30, 2012, Reenstierna sought reconsideration and a stay of the sanction. The Board granted the stay on December 14, 2002, pending its review of the record.[4]

---

[3] The grievance against Reenstierna was adjudicated prior to the 2013 amendment of the Board's rules. None of the provisions at issue here were affected beyond a change in section number. For ease of reference, the court cites to the current rules in this order.

[4] The court includes these dates as they are relevant to Reenstierna's claim that the Board's decision forced him to

On April 8, 2013, the Board notified Reenstierna that, upon reconsideration, it had dismissed the grievance because the facts failed to establish the presence of professional misconduct. Reenstierna filed suit in February 2014, alleging that Currier's actions:  1) violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A; 2) defamed him; and 3) tortiously interfered with his advantageous business relations.[5]

### III. Legal Analysis

Reenstierna's remaining causes of action revolve around the related themes that Currier's report and testimony were false and a product of a bias stemming from their business competition. While Currier disputes both the bias charge and the claimed infirmities in his work, his motion for summary judgment is

---

notify his clients of the Board's disciplinary order, injuring his business.  Given that the Board's order issued on November 2, that he had a 10-day window in which to make any notification, and that his motion to reconsider was not received until November 30 and was then granted, there is a dispute as to whether he could have acted sooner to prevent the Board's order from taking effect.  Given the resolution of this motion, however, the court need not resolve that dispute.

[5]Reenstierna voluntarily dismissed a claim under Massachusetts law that would have been duplicative of count 2.

premised solely on New Hampshire's absolute witness immunity doctrine.[6]

"New Hampshire has long recognized that 'certain communications are absolutely privileged and therefore immune from civil suit.'" Provencher, 142 N.H. at 853 (quoting Pickering v. Frink, 123 N.H. 326, 328 (1983)).  Statements made during judicial proceedings are one class of such privileged communications.  Id.  "The absolute witness immunity doctrine 'reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings.'"  Id. at 856 (quoting McGranahan v. Dahar, 119 N.H. 758, 763 (1979)).  The immunity extends to "pertinent pre-litigation communications between a witness and a litigant or attorney . . . if litigation was contemplated in good faith and under serious consideration by the witness, counsel or possible party to the proceeding at the time of the communication."  Id. at 855.  In so holding,

---

[6] While not dispositive, the court notes that Reenstierna's assertion in his motion papers and at oral argument that Currier admitted that the two are "direct competitors" is based on an incomplete rendering of Currier's testimony.  While Currier stated, "I was in direct competition."  His testimony continued, "Appraisers compete with other appraisers, so we're all in competition with one another."

Provencher followed the form of the Restatement (Second) of Torts § 588 (1977), which provides the caveat that "[t]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Id. at cmt. e.

Here, the parties are in agreement that the Board hearing constitutes a "judicial proceeding" for purposes of the immunity analysis. Thus any statements Currier made at the hearing are absolutely privileged. Reenstierna, however, claims that Currier's other activities, including accepting the assignment and preparing his report, are not protected because at the time Currier accepted the assignment and prepared and submitted his report, no proceeding against Reenstierna was contemplated. Instead, he argues, immunity is foreclosed because Currier's actions <u>caused</u> the Board to initiate the disciplinary proceedings. But as the court explains below, a full and fair reading of Provencher – a case also involving appraisers serving as experts in a government taking – undermines this argument.

The plaintiff in Provencher had agreed to sell the state of New Hampshire 165 acres of land for a highway project. Id. at 850. The agreement called for the state to take the property by eminent domain if the parties could not agree on a sale price. Id. Pursuant to the agreement, the State hired the defendant

8

appraisers, who appraised plaintiff's property at roughly $1 million.  Id.  The plaintiff refused to sell based on the state's appraisal, and they entered eminent domain proceedings.  Id.; N.H. Rev. Stat. Ann. § 498-A:4.  The defendant appraisers testified in accordance with their appraisals as experts regarding the value of plaintiff's land.  The plaintiff presented testimony that the land's value exceeded $7 million.  Id.  The jury determined that the property was worth approximately $4 million.  Id.  The plaintiff sued the appraisers under a variety of legal theories, alleging several breaches of duty owed to him as a putative third-party beneficiary to the contract with the state.  Id.

The trial court dismissed the suit, finding the appraisers immune from suit.  The New Hampshire Supreme Court affirmed, finding "that it is clear that the parties seriously contemplated litigation" even though the state had not initiated eminent domain proceedings at the time the appraisals were complete.  Id. at 855.  The Court based this conclusion both on the parties' written agreement and the provisions of the Eminent Domain Procedure Act (EDPA), N.H. Rev. Stat. Ann. § 498-A.

While there is no equivalent agreement in this case spelling out the likelihood of a judicial proceeding, certain observations made by the Court in Provencher with respect to the statutory

scheme inform the analysis in this case because the procedures mandated by the EDPA bear a similarity to the procedural rules under which the Board operates.  The Provencher Court first recognized that the EDPA requires the state to attempt a voluntary purchase prior to an eminent domain taking, and may only commence condemnation proceedings if the landowner rejects the state's purchase offer.  142 N.H. at 856.  Further, the state must base its offer on a professional appraisal.  Id.  Thus, according to the Court, at the time the defendants completed their appraisals, the EDPA "specifically state[d] that litigation will be commenced if the parties fail to mutually agree on a purchase price."  Id.  Under this set of circumstances, the Court held, absolute immunity applied to the pre-litigation appraisals "because an eminent domain proceeding was contemplated at the time of the appraisals and the appraisals were relevant to that proceeding."  Id.

    Here, Board rules require that if an appraisal is the subject of a grievance, it must be evaluated for conformity with Uniform Standards of Professional Appraisal Practice.  N.H. Code R. Rab 203.02(b)(4) (2013).  Toward that end, Correnti's predecessor retained Currier.[7]  Board Rules require the

---

[7] Although the Rules allow the complaint officer to evaluate the appraisal at issue, Correnti is a residential appraiser.  He

investigator to attempt informal resolution with the appraiser, but only <u>after</u> the investigation – which here included Currier's report -- is complete.  Id. at 203.02(b)(5).  As noted above, no resolution was reached.  Pursuant to the Board's rules, Correnti then recommended to the Board that it proceed with a disciplinary hearing.  See id. at 203.02(b)(6).  No informal resolution having been reached, the Board then voted to "commence an adjudicative hearing if the evidence suggests that the appraiser . . . engaged in misconduct and an informal resolution was not accepted by the appraiser or the board."  Id. at 203.02(b)(7)(c).  The similarities between the regulatory schemes at issue in Provencher and in this case suggest a similar immunity analysis.

   Reenstierna argues that immunity does not apply because at the time Currier accepted his appointment and performed his assigned role, no disciplinary proceeding was "contemplated," within the meaning of Provencher.  The court disagrees.  Board rules require an initial review to determine whether a complaint "should be investigated further or dismissed."  N.H. Code. R. Rab 203.02(b)(1).  In the court's view, the Board's decision to "investigate further" moved the matter comfortably past "the bare possibility that the proceeding might be instituted."

---

testified that he lacks experience appraising gas stations and convenience stores.

Provencher, 142 N.H. at 855 (quoting Restatement (Second) of Torts § 58, cmt. e).  Moreover, Currier was in no different a position than the defendant appraisers in Provencher.  Just as the eminent domain trial in Provencher only became a concrete reality when the mandatory pre-trial takings negotiations failed, Reenstierna's formal disciplinary hearing only took place after the required informal resolution efforts failed.  But such "concreteness" is not a predicate for finding that proceedings were "actually contemplated" and "under serious consideration."

At oral argument, Reenstierna pressed his argument that the mere act of accepting the assignment – apart from any work Currier performed – is a non-immunized basis for liability.  But Provencher holds otherwise.  Id. at 855 ("Immunity for expert witnesses 'extends not only to their testimony, but also to acts and communications which occur in connection with the preparation of that testimony.'") (quoting Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc., 776 P.2d 666, 673 (Wash. 1989) (emphasis added)).

Ultimately, as the structure of the EDPA and the relevant facts warranted the application of immunity to the defendants in Provencher, the undisputed facts here and the similar structure

of the Board rules immunize Currier's actions, reports and testimony.[8]

## IV. Conclusion

Based on the foregoing, the court finds that Currier is absolutely immune from a suit based on his acceptance of the assignment to review Reenstierna's appraisal and his analysis of that appraisal.  Accordingly, defendant's motion for summary judgment[9] is GRANTED.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated: March 31, 2016

---

[8] In a sur-reply, Reenstierna equates Currier to an investigator in criminal cases to argue that only qualified immunity could apply in this case.  He relies on Stinson v. Gauger, 799 F.3d 833 (7th Cir. 2015), a case brought under 42 U.S.C.§ 1983 by a wrongfully convicted defendant against detectives and experts alleging fabrication of testimony.  There, the Court rejected application of absolute immunity to actions taken during the investigative phase of the murder case.  This court declines to follow Stinson.  Most notably, the cited opinion was vacated following the Court's grant of en banc review.  See Stinson v. Gauger, Nos. 13-3343, 3346 & 3347, U.S. App. Lexis 23012 (Dec. 3, 2015).  Regardless, Stinson is inapposite, as it applies neither New Hampshire law, which controls this case and upon which Provencher relied, nor the Restatement, upon which Provencher also relied.

[9] Doc. no. 27.

13

cc: Richard B. Reiling, Esq.
    Roger B. Phillips, Esq.
    Russell F. Hilliard, Esq.